Hardin, P. J.
September 30, 1887, a school meeting was held in the district. At that meeting, “Mr. Cronk, the defendant, got up, and stated the object of the meeting. He said he had called them together to see about building a privy; to see what sort of one they would build, and where they should set it. They voted to build a new one. They then went out, and looked to see where they should put it. Then Mr. Doran came in, and made a motion to put an addition of three feet on the old one; saying how it should be built. ” A resolution was offered and passed declarative of the location, size, and character of the building desired, the material of which it was to be built, and the fence surrounding it. The resolution was adopted by the school meeting, and subsequently placed upon the school records by the district clerk. Before the meeting adjourned, an auction was held in respect to the building contemplated by the resolution, and the action of the school meeting. Several bids were offered, the first one being $25. The person who acted as auctioneer stated, viz.: “You have heard the paper read, and I suppose you understand it. Now, give me a bid on it. ” It appears by the testimony that it was knocked off to Mr. Eauscher. Thereafter the plaintiff commenced to comply with his bid, and erected a building which he claimed was in accordance with the terms of the contract he had entered into in respect to the same. ' It ap *472 pears the defendant was present, and assented to the proceedings had in respect to the employment of the plaintiff to build the privy in question.
We think there is nothing in chapter 538 of the Laws of 1887 which prohibits the trustee from consulting with the tax-payers of the school-district, and from taking their sense in respect to the location of the privy, and the material out of which it should be built.- That chapter imposes a duty upon “the trustee or trustees having supervision over any school-district of this state.” It must be assumed that when he discharges that duty he acts in behalf of the district. The statute further provides that “he or they shall provide suitable and convenient water-closets or privies for each of the schools under their charge, at least two in number, which shall be entirely separated from each other, and having separate means of access, and the approaches thereto shall be separated by a, substantial close fence not less than seven feet in height. ”
It seems to have been assumed by the defendant, when he proposed his answer,—which must be liberally construed, inasmuch as it originated in justice’s court,—that the plaintiff in performing the labor was carrying out the wish of the district. Upon the trial there was a great variety of evidence given upon the subject of whether or no the plaintiff had performed the work, labor, and built the structure in accordance with the understanding entered into by him in the manner in which we have already stated. It is also claimed in behalf of the defendant that there had been a willful, intentional departure from the understanding had between the parties in respect to building the structure in question. Inasmuch as the trial judge submitted that question squarely to the jury, with an instruction that if they found there had been such a willful departure or intentional deviation from the requirements of the agreement made, that there could be no recovery, the verdict establishes that there was no such willful departure or intentional deviation. There was also considerable evidence given upon the trial tending to show that there had not been a compliance with the understanding entered into by the parties. We,think, upon such conflicting evidence, it was within the province of the jury to determine whether there had been a substantial compliance with the contract in respect to the erection of the privy. That question was committed to them in the charge delivered by the trial judge. We think the charge kept within the doctrine laid down in Nolan v Whitney, 88 N Y. 648. It was there held, viz.: “The performance of a building contract need not in all cases be literal and exact to enable the contractor to recover the consideration due upon performance. It is sufficient if, acting in good faith, and intending and attempting to perform, he does so substantially. He may then recover, notwithstanding slight or trivial defects, for which compensation can be made by an allowance to the other party.”
If we regard the resolution as a proposition on the part of the defendant, and the bid of the plaintiff as an acceptance of the proposition, thus forming a contract, it is to be observed that the resolution does not require the placing of a door upon.the privy. If, on the other hand, we have reference to the conversations and declarations held at the school meeting, as shown by evidence produced by the defendant, as indicative that the door was to beplaced upon the building, we are still unable to say that the omission was so great as to take the case out of the rule which we have just stated. There were some other defects claimed by the defendant, and shown by evidence given by him upon the trial in respect to them. There was considerable conflicting evidence offered by the plaintiff, and there was evidence tending to show, on two occasions, after seeing the resolution, and finding that it did not require the placing of a door upon the privy, the defendant declared that the plaintiff was then entitled to his pay. One witness says that the defendant declared, viz., “That is done according to that writing, and he shall have his pay.” In the course of the cross-examination the same witness says that the defendant *473 said, “I either said that, or said that he did not see any reason why the district should not pay him.” Another witness, after declaring some conversation liad with the defendant, says, “When he got through he said he did not see any reason why he should not have his pay,” referring to a declaration made by the defendant. The verdict which was rendered by the jury seems to indicate that they allowed the defendant liberally for any defects which they found to have existed in the structure; inasmuch as they deducted from the sum which the plaintiff was to receive—of $11—$10.75; rendering a verdict for the plaintiff only for 25 cents. While there is no definite evidence in respect to how much it would cost to remedy the defects, we are of the opinion that the jury liberally allowed the defendant all that it would cost to remedy the defects, if not much more. It seems to have been the sentiment of the district, as illustrated by a resolution which they passed January 11, 1888, that the defects should be remedied by the trustee, for they declared, in a resolution passed that date, that “the trustee shall cause the same to be completed, and pay for the same, and deduct the amount so paid from the $11 which he was to receive for building the same, and pay him the balance. ”
We think it was not prejudicial error to receive upon the cross-examination the fact that the door had been placed upon the building, as it bore upon the question of damages, the jury would consider it in allowing the defendant compensation for the defects, if they were of the opinion that the contract required the furnishing of a door upon the privy. These views lead to the conclusion that the verdict of 25 cents in favor of the plaintiff is sufficiently favorable to the defendant, and should be sustained.
We may properly omit to pass upon the question of costs of this appeal, and leave that question to be determined upon proof to be taken before the taxing officer. It is provided in section 6 of the school laws, (2 Bev. St. 7th Ed. p. 1187, § 6,) viz.: “In any action against a school officer or officers, including supervisors of towns, in respect to their duties and powers under this act for any act performed by virtue of or under color of their offices, or for any refusal or omission to perform any duty enjoined by law, and which might have been the subject of an appeal to the superintendent, no costs shall be allowed to the plaintiff in cases where the court shall certify that it appeared on the trial that the defendants acted in good faith.” Whether the defendant acted in good faith or not is not a question to be determined exclusively upon this appeal, so far as it relates to the question of costs. We may therefore properly affirm the judgment, leaving the question of costs to be governed by the law applicable to such a case. Judgment of the county court of Oneida county and the order affirmed.
Eollett, J., concurs. Martin, J., dissents.